**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**WESTERN DISTRICT OF KENTUCKY**

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| RICKY BALDWIN and | ) | CASE NO. | 20-10009(1)(7) |
|     LORIE JEAN BALDWIN | ) | | |
| MELISSA ANN MADDOX | ) | | 20-10037(1)(7) |
| JIMMY MICHAEL LAWHORN | ) | | 20-10048(1)(7) |
| AARON DEON HADLEY and | ) | | 20-10068(1)(7) |
|     EMILY BELLE HADLEY | ) | | |
| DARRELL WAYNE OLLERY and | ) | | 20-10084(1)(7) |
|     DONNA KAY OLLERY | ) | | |
| SHEILA JOAN CARLTON | ) | | 20-10088(1)(7) |
| GREGORY RYAN BALDOCK | ) | | 20-10158(1)(7) |
| STEPHEN ALLEN THOMAS | ) | | 20-10207(1)(7) |
| ROBERT LLOYD RAY and | ) | | 20-10211(1)(7) |
|     SHEILA LOIS RAY | ) | | |
| MARILYN L. JANES | ) | | 20-10225(1)(7) |
| HEATHER RENEE HUTCHINS | ) | | 20-30066(1)(7) |
| | ) | | |
|        Debtor(s) | ) | | |

**MEMORANDUM-OPINION**

**INTRODUCTION**

Before the Court are the above referenced cases filed by attorney Michael Harris ("Harris"), in which he offered the Debtors bifurcated fee agreements for filing their Chapter 7 Voluntary Petitions. The issue before the Court is one facing many jurisdictions, that is, whether these arrangements violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, as well as the Kentucky Rules of Professional Conduct. After an exhaustive analysis, the Court concludes that the fee arrangements offered by Harris and accepted by his clients in these Chapter 7 cases violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Kentucky Rules of Professional Conduct.

The Court sought input from Tim Ruppel, acting United States Trustee for Region 8 (the "U.S. Trustee"), who filed a thorough analysis of the fee agreements used by Harris in the above referenced cases.[1]  The U.S. Trustee concluded the bifurcated fee agreements used by Harris herein are problematic on several grounds and recommended that the Court cancel Harris' contracts with each of the Debtors herein.  On January 13, 2021, following submission of the U.S. Trustee's Report, this Court entered an Order indicating that it believes the contracts used by Harris violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Kentucky Rules of Professional Conduct.  The Court also directed Harris to seek an opinion from the Kentucky Bar Association on the ethical propriety of the specific fee agreements referenced herein.  The Kentucky Bar Association, however, declined to weigh-in on the matter.

Finally, the Court met with all of the Bankruptcy Judges from the Western District of Kentucky regarding their views on the matters addressed herein.  Although the eleven cases referenced were assigned to Judge Lloyd, all of the Judges in this District have reviewed and analyzed the issues presented and agree with this Court's conclusions.  Since the matters addressed in this Opinion affect all attorneys practicing bankruptcy law in the Western District of Kentucky, the legal conclusions set forth in this Memorandum-Opinion represent the legal conclusions of all Judges of the Bankruptcy Court for the Western District of Kentucky.

---

[1]The U.S. Trustee's Memorandum in Compliance with Amended *Sua Sponte* Order of the Court is found in its entirety at docket entry No. 36 in the Baldwin case, No. 20-10009.

## PREFACE

Bankruptcy represents a complex set of statutes that have been codified in one form or another since 1898.  The success of a Chapter 7 bankruptcy largely depends upon the debtor receiving a discharge of unsecured claims, and at times, secured claims.  Only Congress may write legislation to afford relief to debtors.

This Court, like all bankruptcy courts, is presented with determining whether certain written contracts for legal representation of debtors in Chapter 7 proceedings pass the legal and ethical requirements established by Congress and the Kentucky Bar Association.  These contracts generally seek to avoid the discharge of unpaid sums for legal services rendered pre-petition to Chapter 7 debtors.  Absent very specific circumstances, a Chapter 7 debtor may expect discharge of pre-petition unsecured claims and debtor's legal counsel can be expected to enforce the discharge injunction of 11 U.S.C. § 524 on debtor's behalf against any adverse actions of the holders of the discharged claims.

Waiting for a client to have a sufficient sum to pay a legal fee is not new to anyone who has practiced law.  Bankruptcy lawyers, however, are well aware that waiting to get their fee or any portion of it after the Chapter 7 petition is filed means their fee will be discharged and collection forbidden.

Thus, Chapter 7 bankruptcy practice is trying to transition from the traditional upfront payment in full of the quoted fee to legal representation contracts that seek to divide counsel's responsibilities to their clients on a pre- and post-petition basis in order to avoid the discharge injunction applying to the lawyer's fees.

The Bankruptcy Court has the unenviable job of looking into the lawyer/client relationship to determine if these types of legal contracts violate the Bankruptcy Code, Rules and ethical rules governing the practice of law.  Inherent in Bankruptcy law is a situation where a lawyer's own financial interests in getting their fees paid up front or quickly, clashes directly with their client's need for a discharge of debts and a fresh start, which is the primary goal of filing bankruptcy in the first place.

Attorneys, therefore, must balance their right to attorney's fees against the inherent conflict of interest presented by creating constructive devices and contracts to avoid Congressional statutes and rules designed to protect the debtor.  Until Congress addresses this problem, this Court is left to identify the problems involved and attempt to correct practices which threaten the integrity of legal practice before it.

## PROCEDURAL AND FACTUAL BACKGROUND

Harris is an attorney practicing in the Bowling Green Division of the Western District of Kentucky and represents debtors in Chapter 7 and Chapter 13 cases in that District.  In each of the eleven cases referenced herein, Harris filed a skeletal Voluntary Chapter 7 Petition which included Official Form 101 and a List of Creditors.  The records indicate that the filing fee of $335 was paid at the time of the filing of the Petition.  Question 8 on Form 101 asks the Debtor to indicate how the fee will be paid.  In each of the cases, the first box was checked which indicated, "I will pay the entire fee when I file my Petition."

Approximately seven to fourteen days after the skeletal Petition was filed, the remaining schedules were filed, including Form 2030, Disclosure of Compensation of Attorney for Debtor(s)

("Disclosure").  In the Disclosure, Harris indicated in response to Question 1, that the Debtor had agreed to pay $0.00 for legal services, that Harris had prior to the filing of this statement received $0.00, and that the balance due was $0.00.  In response to Question 4, Harris stated, "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."

Paragraph 7 of the Disclosure refers to the bifurcated fee agreements used by Harris.  The form states as follows:

. . .

7.  Debtor and counsel have entered into two, separate fee agreements:

a.  The first agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel fees under the first agreement were zero dollars, of which zero dollars was paid and the balance (if any) was waived by counsel.

b.  The second agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules and assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; representation at the first meeting of creditors; and other services outlined in the fee agreement.  Counsel's fees under the second agreement are $2,500.00.  The second agreement allows the Debtor(s) to pay these post-petition fees and costs in installments for up to 12 months following the bankruptcy filing.

1.  Counsel has a recourse line of credit from a third-party lender secured by (among other things) a collateral assignment of the accounts receivable of counsel, including amounts owed by Debtor(s) to counsel.  Counsel's obligation to repay this indebtedness is not contingent upon receipt of payment from Debtor(s). Counsel may draw upon the line of credit based upon the value of accounts receivable, including the amount owed by Debtor(s) to counsel.  The lender also provides payment management and processing services and will collect installment payments from Debtor(s) as well as any third-party guarantor (if applicable) on behalf of counsel. Lender will apply amounts paid by Debtor(s) against counsel's indebtedness to

lender.  Counsel has fully informed Debtor(s) and obtained consent to the collateral assignment and to a limited sharing of information with lender concerning Debtor(s) to facilitate counsel's financing and lender's payment management and processing concerning Debtor(s).

*See* Disclosure of Compensation of Attorney for Debtor(s), Form 2030, at docket entry No. 11 in the Baldwin case, No. 20-10009.

In August of 2019, Harris and Fresh Start Funding ("FSF"), an Arizona company that provides financing and other services to law firms that represent consumer clients, entered into the Line of Credit and Accounts Receivable Management Agreement (referred to herein as the "LOCARMA").  Under the terms of the LOCARMA, FSF provides a $50,000 line of credit to Harris in exchange for a lien on and right to collect his accounts receivable.

Subsequent to the First Meeting of Creditors, the Court entered an Order "to set a Show Cause Hearing regarding post-petition fees paid or owing to Debtors' counsel, at which time the attorney for the Debtor(s) shall show cause for failure to disclose the post-petition balance due at the time of the filing of the Disclosure of Compensation of Attorney in compliance with 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016" ("Show Cause Order").

On July 28, 2020, Harris filed a Response to the Show Cause Order in each of the cases and stated that his Disclosure Forms were accurate and complied with § 329 because "the narrative contained in paragraph 7 of each Disclosure not only describes the engagement structure but also divulges the balance of post-petition fees due at the time of filing of such Disclosure."

The Show Cause Hearing was scheduled for May 21, 2020, but after several reschedulings of the hearing due to the COVID-19 pandemic, the hearing was held telephonically on August 6, 2020.  After that hearing, Debtors' attorney was ordered to file all written agreements and/or

contracts between counsel and the Debtor(s), including fee agreements and all documents referenced in subparagraph (1) of paragraph 7 related to Counsel's recourse line of credit with the third-party lender referenced in each of the eleven cases.

On August 17, 2020, Harris complied with the Court's August 6, 2020 Order by filing the LOCARMA between FSF and himself, the Chapter 7 Bankruptcy Pre-Petition Services Agreement, the Chapter 7 Bankruptcy Post-Petition Services Agreement, and the Recurring Payment Authorization and Consent Form used in each of the cases.

On September 9, 2020, this Court entered an Order requiring the U.S. Trustee to review Harris' contracts and file a memorandum regarding the ethical obligations imposed upon an attorney representing a debtor under Chapter 7.  In response to this Order, the U.S. Trustee with the consent of Harris conducted examinations of each of the Debtors.

On December 21, 2020, the U.S. Trustee filed the Memorandum of the United States Trustee in Compliance with Amended *Sua Sponte* Order of the Court with its findings after its investigation.

The following constitutes the U.S. Trustee's analysis of the LOCARMA entered into between Harris and FSF in August 2019 as set forth in its Memorandum filed on December 21, 2020.

> In August of 2019, Harris and FSF entered into a Line of Credit and Accounts Receivable Management Agreement ("LOCARMA").  Under the terms of the LOCARMA, FSF provides a $50,000 line of credit to Harris in exchange for a lien on, and right to collect, his accounts receivable.  The process for Harris to include a client in the LOCARMA is as follows:
>
> 1.    Harris engages a client using a bifurcated fee agreement which allows for collection of fees after the filing of the petition.
>
> 2.    Harris uploads the client contract to FSF's online database.
>
> 3.    FSF reviews the client contract for compliance with its underwriting requirements and, if the client meets these

requirements, it becomes an Approved Account ("<u>Approved Accounts</u>").

4.      After the client contract becomes an Approved Account, FSF has three business days to make an advance to Harris of 60 percent of the entire fee charged to the client ("<u>Initial Amount</u>").

5.      Contemporaneously, FSF retains 15 percent of the entire fee charged to Harris' client (the "<u>Holdback Amount</u>") "as security for the performance of all Approved Accounts funded by FSF" under the terms of the LOCARMA.

6.      The remaining 25 percent of the fee is retained by FSF as compensation for its services.

In order to operate as designed, the LOCARMA is dependent on FSF's ability to collect fees from Harris' debtor-clients post-petition. As such, the prefatory stipulations contained in the LOCARMA state that Harris' clients enter "into a post-petition fee agreement...with the Firm to pay a fixed fee for the post-petition chapter 7 services." Accordingly, the use of a bifurcated agreement is a requirement of Harris' ability to participate in the LOCARMA and access the line of credit.

The LOCARMA aggregates the Holdback Amount from each of Harris' clients into a single account (the "<u>Holdback Account</u>"). This Holdback Account then functions as an insurance policy "for the performance of all Approved Accounts funded by FSF" under the LOCARMA.

The LOCARMA requires Harris to disclose the existence of the LOCARMA to his clients, answer any questions about the agreement, and attain, in writing, the client's consent to the assignment of their account as an Approved Account. The LOCARMA also contains the following requirements for Harris:

1) His clients consent in writing to the disclosure of their personal information the FSF required to collect the accounts receivable.

2) His clients consent to FSF contacting them by email, telephone, text message, and regular mail.

3) He utilizes a contract that contains disclosure language substantially similar to the language FSF provided as its best practices.

4) He discloses the bifurcation of fees and collateral assignment on his Form 2030 in a manner that comports with FSF's recommended best practices.

-8-

5) He will pay the filing fee promptly if the client does not pay it in advance and FSF has allocated the Initial Amount to Harris.

6) His clients are fully informed, and received an opportunity to seek legal advice, regarding consent and waivers of conflicts of interest; and

7) His clients enter into a payment authorization form.

The remainder of the LOCARMA then: (i) allocates the responsibility over management and collection of all Approved Accounts to FSF while setting the terms for collection of those accounts; (ii) guarantees that FSF will defend Harris against any challenges brought in relation to the LOCARMA; and (iii) grants a first security interest to FSF in Harris' accounts receivable.

The collection terms in the LOCARMA allow FSF to "manage and collect the payments under the Approved Accounts" which includes the authority to "modify payment terms, defer payments and take other steps as reasonably necessary to resolve delinquencies and defaults by Clients under the Approved Accounts." However, the LOCARMA states that, in the event of a default FSF will demand payment from Harris only if the Holdback Account does not contain sufficient funds to cover a default by one of his client's Approved Accounts. Further, the LOCARMA states that FSF will not file a collection lawsuit against Harris clients unless: (I) Harris is in default under the LOCARMA; (ii) the Holdback Account does not contain sufficient funds to cover any defaults of Approved Accounts; and (iii) Harris has withdrawn from, or completed, representation of the client at issue. None of these provisions related to collection are contained in the contract between Harris and his clients.

*See* Memorandum of the United States Trustee in Compliance with Amended *Sua Sponte* Order of

the Court, at 5-7, *In re Baldwin*, No. 20-10009 (Bankr. W.D. Ky. Dec. 21, 2020), ECF No. 36.

On January 13, 2021, this Court issued an Order, based upon the Court's review of the legal

contracts and FSF contracts, as well as the U.S. Trustee's analysis of the fee agreements and

contracts between Harris and the Debtors in each of the cases referenced herein. The Court

concluded that it believed the legal contracts and FSF contracts violate the United States Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure and the Kentucky Rules of Professional Conduct.

The Court then ordered Harris to seek an opinion from the Kentucky Bar Association regarding the

ethical propriety of the legal contracts and the FSF contracts as to whether they comply with the Rules for Professional Conduct as adopted by the Kentucky Supreme Court.

On June 13, 2021, Paul F. Issacs[2], the Chair of the Kentucky Bar Association's Ethics Committee, sent a letter to Dan Garrison, a lawyer licensed in Arizona and an agent of FSF who represented Harris before the Committee, and copied this Court on the letter. The letter stated that the Committee declined to provide an opinion on the issues presented because (1) the request asked the Committee to review past conduct rather than pending conduct; and (2) because this Court's Order of January 13, 2021 specifically determined that Harris had violated the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Kentucky Rules of Professional Conduct. Additionally, the Committee stated that since Attorney Garrison was requesting the opinion, rather than Harris, and since Garrison was not a member of the Kentucky Bar Association, the Committee would not be issuing an opinion on the matter.

## **LEGAL ANALYSIS**

The issues before the Court presented by the LOCARMA entered into by Harris and FSF include whether advancing a client's filing fee in a Chapter 7 case and the bifurcated fee agreement used by Harris and his Chapter 7 clients herein are violative of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Kentucky Rules of Professional Conduct. While the Court recognizes the underlying attorney fee problem faced by debtors, the Court finds the practices used by Harris herein violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Kentucky Rules of Professional Conduct. The LOCARMA is clearly

---

[2]Judge Paul Issacs is a retired Kentucky Circuit Court Judge.

designed to defeat existing Bankruptcy law and Rules enacted over at least a century ago to protect

debtors, and all the machinations inherent in its processes will not save it from review and censure.

Further, the Kentucky Rules of Professional Conduct are no less forgiving to counsel.

  The essential problem presented by Harris and FSF through the LOCARMA is that Harris

is using the post-petition contract to get the debtor/client to pay fees they could not pay quite literally

the moment before the petition is filed, adding a complex nondischargeable contract and exorbitant

expenses to a debtor/client instead of the promised "fresh start."  Harris, like all counsel to Chapter

7 debtors in the Western District of Kentucky, cannot avoid the very specific obligations of legal

services to a debtor once they file the Chapter 7 on their behalf.  Bankruptcy Courts do not allow

counsel to pick and choose what they "do" for a debtor in a Chapter 7 pre- or post-petition, as will

be more fully discussed.  Legal advice to a debtor is one thing, but following through with concrete

and established steps of Chapter 7 legal representation is another.  Those concrete steps are well

known.

  Once Harris files a Chapter 7 petition for a debtor, he is duty bound to complete the debtor's

schedules and statement of affairs, attend the Section 341 meeting, and negotiate and attend any

hearings on reaffirmation agreements, most of which takes place post-petition.  So Harris, by

encouraging a debtor/client to sign the post petition LOCARMA, has a clear conflict of interest

between his entitlement to payment for his services and a debtor/client who has every right to decline

the post- petition contract and insist that Harris fulfill his duties under the Bankruptcy Code and this

Court's local rules once the Chapter 7 petition is filed.  But as is obvious to all in the Bankruptcy

arena, debtors are extremely vulnerable and, only in the most unusual cases, are able to say no to

their lawyers when they need them the most.  There are alternatives available to debtors and their

-11-

counsel that can protect both parties and still afford debtors relief.  Chapter 13 would solve this dilemma for many if not most debtor/clients and Congress has shown great interest in pushing debtors in that direction.  The FSF LOCARMA design and extraordinary cost will disadvantage most Chapter 7 debtors and place their lawyer in the unenviable position of encouraging a debtor to enter into highly disadvantageous financial arrangements that benefit the lawyer and his lender.

**A.  An Attorney May Not Advance a Client's Filing Fee.**

Under Harris' bifurcated fee proposal in the cases before the Court, the Debtors were presented with two options regarding payment of the filing fee.  The first option is that the debtor pay the entire $335 filing fee prior to the filing of the case.  The second option is that the $335 fee will be advanced by Harris at the time the petition is filed.  The debtor will repay the fee after the case is filed upon entering into a post-petition services agreement whereby the debtor will make monthly payments to Harris until the flat fee of $2,500 is paid in full.  Under the terms of the LOCARMA, Harris paid the filing fee and then received 60% of the entire fee charged to the client, three days after the client became an "Approved Account" under the FSF contract with Harris.

Bankruptcy Rule 1006 requires that the filing fee shall accompany every petition.  In other words, the fee must be paid at the time the petition is filed.  In ten of the eleven cases herein,  Harris advanced the filing fee for the client at the time the petition was filed.  However, the client repaid Harris the advanced fee amount post-petition through the monthly installment payments.

The Court is aware of Judge Wise's analysis in *In re Carr*, 613 B.R. 427 (Bankr. E.D. Ky. 2020), in which the court approved an arrangement whereby an attorney advanced a client's filing fee as part of a post-petition fee contract where the debtor paid the attorney's fee over twelve months with a monthly payment of $98.75.  In *Carr*, the contract required the installment payments received

-12-

by the attorney to be applied first to the filing fee before the attorney could access any of the funds paid by the debtor. Judge Wise determined that this practice did not violate Fed. R. Bankr. P. 1006(b)(3), which provides that all installments of filing fees must be paid in full before the debtor or Chapter 13 Trustee makes any further payments to an attorney who renders service to the debtor in connection with the case. *Id.* at 437.

The scenario presented in *Carr* is not the same scenario presented in the FSF contracts. Here, Harris receives 60% of the entire attorney's fee from FSF once the debtor becomes an "Approved Account." There is no holdback of fees for services rendered until the filing fee is paid in full first, as was the case in *Carr*. Essentially, Harris is using the post-petition LOCARMA to borrow from FSF the debtor's filing fee that he advanced and his attorney fee in order to represent clients who are unable to pay the fees in full on a pre-petition basis.

It is clear in the Voluntary Petitions herein, that the Debtors represented that the entire fee would be paid when the Petition was filed. However, in most of the eleven cases (excluding Stephen Thomas, 20-10207), the filing fee was advanced by Harris, not paid by the Debtor. Advancement of the filing fee by an attorney, with the expectation of repayment post-petition, violates the Bankruptcy Code and the Kentucky Rules of Professional Conduct.

This Court agrees with Judge Isicoff's analysis on this issue as set forth recently in *In re Brown*, Nos. 20-23632-BKC-LMI, 20-23354-BKC-LMI, 20-18268-BKC-LMI, 2021 WL 2460973 (Bankr. S.D. Fla. June 16, 2021). In *Brown* the Court stated:

> The Court finds that a law firm's payment of the filing fee with post-petition repayment by the Debtor violates the Bankruptcy Code as well as the Florida Bar Rules. The filing fee is due upon the filing of the Bankruptcy Petition. Therefore, the Debtor's obligation to repay the filing fee to the firm is a pre-petition obligation that is dischargeable. A law firm that advances the fee with the expectation of repayment post-petition is violating Section 526 by advising the Debtor to incur a

-13-

debt "to pay for bankruptcy related legal services," violating 11 U.S.C. § 362 and,
assuming the Debtor gets his or her discharge, violating 11 U.S.C. § 524.

*Brown*, 2021 WL 2460973 *18. Here, the Debtors are obligated to repay Harris the filing fee he

advanced, post-petition. This is a pre-petition obligation that is dischargeable. This Court also

believes that advancing the filing fee violates 11 U.S.C. § 526(a)(4), which provides that a debt relief

agency shall not "advise an assisted person or prospective assisted person to incur more debt in

contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition

preparer a fee or charge for services performed as part of preparing for or representing a debtor in

a case under this title." Under the terms of the LOCARMA, the Debtors herein are incurring more

debt for fees and services related to Harris' representation in the case. As explained further herein,

the fees charged increased the Debtors' debt load because the fees paid under the post-petition

contract were significantly higher than the traditional fee structure in a Chapter 7 case.

Judge Isicoff further found that the payment of the filing fee was also a violation of Rule 4-

1.8(a) of the Florida Bar Rules. The Kentucky Rule on Professional Conduct, SCR 3.130(1.8)(e)(1),

is the same as the Florida Bar Rule 4-1.8(e). It states, "a lawyer shall not provide financial assistance

to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may

advance court costs and expenses of litigation, the repayment of which may be contingent on the

outcome of the matter; . . ."). That is an attorney "may" advance costs for the repayment of which

are contingent on the outcome of the case, "*not* that the attorney may always advance costs for a

client regardless of whether the repayment is contingent on the outcome of the case." *Brown*, 2021

WL 2460973 at *18.

The debtor's attorney in *Brown* contended that the payment of the filing fee presented an

"access to justice issue." *Brown*, at *18. While this argument has some merit in contingency fee

cases, it does not apply in the bankruptcy setting. This Court does not see this as an issue that prohibits access to the Court for the same reason Judge Isicoff set forth in *Brown*. Debtors in bankruptcy who cannot afford to pay the entire fee up front have other options. They may either pay the fee upfront, or the debtor may file an application to pay the fee in installments or, if the circumstances warrant, the debtor may file an application to have the filing fee waived. *Id.* Such motions in this District are routinely granted where circumstances warrant. Chapter 7 cases filed with either an application to pay the fee in installments or for waiver are NOT rejected in this District. They may be set for hearing to determine whether the relief requested is appropriate, but not tendering the filing fee is clearly not fatal to a Chapter 7 filing. This Court does not believe this local practice is unique.

For these reasons, the Court determines that Harris' advancement of the filing fee on an expectation of repayment post-petition violates 11 U.S.C. § 526(a)(4). By advising a client to incur debt in order to pay for bankruptcy related legal services, the practice violates 11 U.S.C. § 362 and, assuming the debtor gets his or her discharge, violates 11 U.S.C. § 524. It is also violative of Kentucky Supreme Court Rule 3.130(1.8)(e)(1).

**B.    The Factoring of Fees Under the LOCARMA and FSF Agreement Violates the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the Western District of Kentucky and the Kentucky Rules of Professional Conduct.**

In August of 2019, Harris and FSF entered into the LOCARMA under which FSF provided Harris with a $50,000 line of credit and in return, FSF received a first priority lien on and the right to collect Harris' accounts receivable. In order for a client of Harris to become an "Approved Account" and eligible to become part of the LOCARMA, the client must sign a bifurcated fee

agreement which allows for the collection of fees post-petition. Once the client contract becomes an Approved Account, FSF has three business days to advance Harris 60% of the entire fee charged to the client. At the same time, FSF retains 15% of the entire fee quote as security for the performance of all Approved Accounts funded by FSF. The 15% is used as "insurance" to cover any defaults by any individual debtor under the terms of the LOCARMA. The remaining 25% of the client's fee is retained by FSF as compensation for its services.

In *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004), the United States Supreme Court established that 11 U.S.C. § 330(a)(1) "does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327." Any unpaid balance of pre-petition fees is dischargeable in bankruptcy. *Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005). If the fee obligation arises pre-petition, the Chapter 7 lawyer cannot look to the debtor or the estate post-petition for payment. Thus, Harris and FSF use the LOCARMA to ensure that the debtor is legally obligated to pay post-petition on a contract an amount that if included in a pre-petition contract, would be discharged. Yet, lawyers filing Chapter 7 petitions have very specific responsibilities to their clients that they must perform and they cannot use a post-petition contract to avoid those obligations as will be more fully discussed below. Encouraging a client to sign the post petition contract on the premise that the lawyer will finish preparation of required Bankruptcy filings, attend the Section 341 meeting(s) and provide advice regarding reaffirmations and attendance at any hearing thereon, is on its face, a violation of the discharge injunction of 11 U.S.C. § 524 since the lawyer owes these duties to their clients once they file the Chapter 7 petition, whether they have been paid or not.

-16-

Further, the factoring of fees, whether called "insurance" (15%) or the compensation for FSF (25%), charged via the LOCARMA are among the financial costs of this post-petition arrangement. Factoring is a financing device secured by collateral which in this case is the obligation of the debtor under the post-petition contract. The burden of the borrowing cost is relative depending upon who pays it. The LOCARMA terms are negotiated by Harris and FSF, but Debtors who pay the bill, apparently do not get to negotiate on the price. Harris' disclosures to his clients fall far short of what would be appropriate in this Court's view.

Here, Harris is passing on to his clients his cost (15% + 25%) of "borrowing" his legal fees and a return of the advanced filing fee so that he can receive his 60% installment within three days of acceptance by FSF. Harris is asking his Chapter 7 clients to sign the LOCARMA which creates nondischargeable obligations, including terms highly favorable to Harris, in return for legal services Harris must render to his clients whether they sign the agreement or not. The Court has found no contractual terms or disclosures where these conflicting financial incentives and legal responsibilities to the Debtors post-petition have been adequately set forth whether in documents the Debtors are asked to sign or in disclosures of counsel required in Court documentation. This arrangement evidences overreaching by counsel and it is doubtful that any amount of disclosure can remedy the problem.

Moreover, assuming entering a post-petition contract for legal services already fully owed to a debtor due to a pre-petition filing can withstand § 524 vetting, Harris could allow his clients to pay his fees (presumably between $1,250 and $1,500 per case) over a similar twelve month period. This "financing" by Harris would cut the 15% + 25% FSF fees out of the post-petition contract saving the debtor a great deal of money, except Harris would not get the advance of 60% of the legal

-17-

fee within three days of the acceptance by FSF.  On its face, the LOCARMA is wholly beneficial for counsel and disturbingly expensive for his clients.  Herein lies a serious conflict of interest that this Court believes is not appropriately disclosed to the debtor/clients. This Court concludes that this practice violates the United States Bankruptcy Code, the Local Rules of the United States Bankruptcy Court for the Western District of Kentucky, and the Kentucky Rules of Professional Conduct.

Further, the dual contract work-around method is clearly not available to lawyers in order to limit their responsibilities to a debtor.  The Bankruptcy Code specifically sets forth an attorney's pre-petition duties when filing a petition for a debtor.  *See;* 11 U.S.C. § 707(b)(4)(C).  These duties include:

> (i)     performing a reasonable investigation into the circumstances that gave rise to the petition . . .;
>
> (ii)    determining that the petition, pleading or written motion –
>
> (i) is well grounded in fact; and
>
> (II)    is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).  *Id.*

The statute requires the attorney, pre-petition, to review and make an inquiry into the debtor's financial affairs to ensure the petition and schedules are accurate.  *In re Prophet*, 628 B.R. 796-97 (Bankr. D. S.C. 2021).

Courts that have considered the propriety of bifurcated contracts in Chapter 7 cases have, in general, considered the following factors probative when applied to the particular facts of the case. These include the viability of the bifurcation structure; the sufficiency of the attorney's disclosures to the debtor and the court; whether the attorney's entire fee is reasonable; and whether the

-18-

bifurcated agreement is in the client's best interest. In *Prophet*, the Bankruptcy Court stated that a counsel's bifurcated fee agreements were impermissible under local bankruptcy rules governing the extent of an attorney's duty to represent the debtor. *Id.* at 804. The Court required the counsel to return all fees paid post-petition under the fee agreements in the three cases at issue. *Id.*

In *Prophet*, the Bankruptcy Court determined that a lawyer who used a Fresh Start factoring agreement, similar to the one used by Harris herein, violated SC LBR 9011-1(b) because the attorney was only agreeing to provide limited services rather than agreeing to represent the debtor for the duration of the case as required by the local rule. The South Carolina Rule states, in pertinent part:

> Except as may be provided in a written agreement with the debtor concerning appeals and adversary proceedings, the law firm/attorney which files the bankruptcy petition for the debtor shall be deemed the responsible attorney of record for all purposes including the representation of the debtor at all hearings and in all matters arising in conjunction with the case, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure. . ..

SC LBR 9011-1(b).

In addition to the duties of an attorney under 11 U.S.C. § 707 and the state's local rules, other pre-petition requirements include various disclosures under 11 U.S.C. § 527, as well as pre-petition requirements under 11 U.S.C. § 528. These include that a pre-petition written contract be entered into with the debtor that clearly explains the services being provided, the fees being charged and that the debtor be given a copy of the executed contract. These provisions establish that an attorney filing a bankruptcy petition is required by the Bankruptcy Code and Local Rules to provide a number of services before the petition is filed. In *Prophet*, the court stated:

> The Local Rule designates the firm or attorney filing the petition as responsible but does not limit representation to matters arising with and after filing the petition. The Local Rule requires the attorney to perform all duties in connection with the representation of the debtor, beginning with the pre-petition disclosures and investigations and the preparation of the petition, through the filing of the petition

and the conclusion of the case, with the exception of adversary proceedings and appeals when excluded in writing. Because the Local Rule requires this continued representation, it simply does not allow bifurcated representation. It allows for one representation agreement only. In other words, the representation and the agreement are co-extensive.

*Id.* at 798.

The *Prophet* court went on to state that although the South Carolina Rules of Professional Conduct which applied in that District, allowed attorneys to restrict their representation, the client must give informed consent and the required disclosures must be reasonably and adequately disclosed to the client. Additionally, the Court stated the Local Rule required a different result and that the bankruptcy judges in that District needed the Local Rule because bankruptcy is different than the traditional two-party dispute. The goal in a bankruptcy case "is to deal with all of the debtor's financial issues – the case involves all of the debtor's property, all creditors and is intended to provide the debtor with all of the relief available under the bankruptcy code. The Court relies on counsel to assist the debtor, and the Court throughout the process and it is necessary for counsel to be available at all stages of the case." *Id.* at 803. For this reason, representation in bankruptcy cases is broader than in a typical two-party dispute. *Id.*

While the wording of the Local Rule in South Carolina is different than the wording of Local Rule 9011-1 in this District, the intent and the meaning of the Rules are the same. Under the Local Rules of the United States Bankruptcy Court for the Western District of Kentucky, an attorney's duties of representation in a bankruptcy proceeding are contained in Local Rule 9011-1. The Rule states as follows:

-20-

Attorneys–Duties.

(a)    Extent of an Attorney's Duty to Represent.

    (1)    Any attorney who files a bankruptcy petition for or on behalf of a debtor will remain the responsible attorney of record for all purposes including the representation of the debtor in all proceedings that arise in conjunction with the case.

    (2)    An attorney is relieved of his or her duties when the debtor's case is closed, or when the attorney is specifically relieved after notice and a hearing upon motion and order of this Court.

Local Rule 9011-1 of Local Rules of United States Bankruptcy Court for the Western District of Kentucky.

Although Harris and FSF attempt to limit the attorney's duties in these cases to tasks performed pre-petition and those performed post-petition, Local Rule 9011-1 clearly requires the attorney who files the petition on behalf of a debtor to "remain the responsible attorney-of-record for all purposes, including the representation of the debtor in all proceedings" that arise in conjunction with the case.  In the Western District of Kentucky, counsel must provide representation up to but not including pursuing and defending debtors in adversary proceedings absent a clear written agreement of such representation.

The attorney cannot bifurcate his or her representation of the debtor.  Under LR 9011-1(a)(2) the attorney is only relieved of their duties when the debtor's case is closed or when the attorney is specifically relieved after notice and a hearing upon, motion and order of this Court.  This Court agrees with the reasoning in *Prophet* that asking debtors who are under financial pressure and who often "have a history" of making questionable "financial" decisions to sign an agreement to be held

-21-

liable for attorney's fees post-petition or risk losing their representation, places them in a position to make another unwise financial decision.  The Local Rule prohibits this type of an agreement.

Judge Wise of the Bankruptcy Court for the Eastern District of Kentucky in *In re Carr*, determined under the specific facts of that case that a two contract option was permissible.  That case, however, did not involve a factoring agreement such as the one in the cases at bar.  Judge Wise specifically stated that while she found the compensation arrangement permissible and reasonable in *Carr*, the court noted it was not considering the propriety of factoring attorney's fees because such an arrangement was not present in that case.  613 B.R. 427, 437 n.9 (Bankr. E.D. Ky. 2020).

Likewise, in *In re Brown*, Judge Isicoff noted the following in a footnote:

> None of the Law Firms factored their fees so this opinion does not address the adequacy of any disclosures related to factoring.  However, the Court has determined that it will not allow any attorney to factor its legal fees.  This creates an inherent conflict of interest between the attorney and the debtor, and violates our R. Regulating Fla. Bar 4-5.4, 4-1.8 and 4-1.7.

*In re Brown*, 2021 WL 2460973 at *24, n.34.

While the above footnote is *dicta* in *Brown* because there was no factoring of fees involved, as well as in *Carr*, this Court finds the reasoning on factoring of fees persuasive herein.  The factoring of fees under the LOCARMA violates the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, as well as this Court's Local Rules and the Kentucky Rules of Professional Conduct.   As the following analysis demonstrates, the FSF contracts and factoring of fees creates an inherent conflict of interest and lacks adequate disclosure between the Debtors, their counsel, and the Court.

### C.    The Bifurcated Fee Contracts Used by Harris and FSF Lack Adequate Disclosure for the Debtors.

The Bankruptcy Code in 11 U.S.C. § 528 lists the requirements for debt relief agencies providing bankruptcy assistance for debtors. The statute, among other things, requires that attorneys providing assistance to "assisted persons,"[3] in return for payment of money or other valuable consideration, must execute a written contract explaining services, fees or charges and payment terms. The debtor must also be provided with a copy of the fully executed and completed contract. Any such contract must "clearly and conspicuously" explain the scope of the services and fees.

Courts considering bifurcation of fees uniformly agree that one of the fundamental elements required in using bifurcated fee agreements is the amount of disclosure regarding the agreement and the debtor. *In re Brown*, 2021 WL 2460973 at *13. The Court in *Brown*, citing the Florida Bar Rules, stated that such agreements require that any limitation on the scope of representation must be reasonable and that the client give "informed consent in writing." The court held that disclosures may include services that may or not be performed, so long as the agreement clearly sets forth that some of the listed services may be performed in a particular case. Judge Isicoff in *Brown* also required a fourteen day recision period and described consequences if the debtor rescinds the agreement. Alternatively, the debtor should be given a fourteen day period after the petition is filed in which to sign the post-petition agreement. Importantly, the pre-petition agreement must disclose that regardless of whether the post-petition agreement is signed, the attorney must continue to represent the debtor unless allowed to withdraw. *Id.* at *15.

The *Brown* court concluded that disclosure to a potential client is adequate so long as:

---

[3]11 U.S.C. § 101(3) defines an "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose non-exempt property is less than $204,425."

(a) The potential debtor receives the separate disclosure form;

(b) The pre-petition agreement and post-petition agreement are provided at the same time for the potential debtor's review;

(c) The pre-petition agreement clearly describes the services that must be performed pre-petition, as well as other services that may be provided; and

(d) The post-petition agreement clearly describes the included services (delineated, where appropriate as "if necessary'); and specifically describes the excluded services, and any additional flat fee or hourly charge associated with those excluded services.

*Id.* at *15.

In this case, the U.S. Trustee has concluded that the bifurcated fee agreements used by Harris are not "clear and conspicuous" as required by 11 U.S.C. § 528(a). Most important to the U.S. Trustee's analysis is that the Harris agreements failed to adequately and clearly explain the effect of a default, a material term in any contract. U.S. Trustee Memorandum at 25. The U.S. Trustee concluded that the adequacy of the information Harris communicated to his client through the bifurcated agreements violated Kentucky Supreme Court Rule 3.130(1.0)(c) regarding the adequacy of disclosures and whether the information provided allowed the client to provide informed consent. The following areas were not clearly communicated to the Debtors herein under the agreements:

1. The consequences of default on the client;

2. The entirety of the relationship between Harris and FSF and its impact on the client; and

3. The payment terms of the contract between Harris and the client.

U.S. Trustee Memorandum, at 26-27.

The Court agrees with the U.S. Trustee's conclusions on the inadequacy of the disclosures to the clients in the agreements in these cases. Particularly troublesome is the lack of disclosure regarding the terms of the LOCARMA between Harris and FSF. This includes the provision on

defaults by one client and collection efforts which use the fund retaining the 15% of the entire fee "as security for the performance of all Approved Accounts funded by FSF," under the line of credit. In other words, a portion of each debtor's funds will be used to cover the default of any one debtor. Certain terms are included in the LOCARMA between FSF and Harris, such as terms as to when FSF will file a collection action against a defaulting client of Harris, but such terms are not disclosed to the individual Debtors. None of the collection provisions are contained in the contract between Harris and his debtor clients.

For all of the above reasons, the Court finds the disclosures under the FSF financing contracts and the pre- and post-petition agreements between Harris and his clients are inadequate and fail to comply with the Kentucky Rules of Professional Conduct and the United States Bankruptcy Code.

### D.    The Bifurcated Fee Contracts Used by Harris and FSF Lack Adequate Disclosure to the Court.

Bankruptcy Rule 2016 requires every attorney representing debtors to file the statement required by 11 U.S.C. § 329 regarding Disclosure of Compensation Paid or to be Paid within one year before the date of filing the petition for services rendered or to be rendered in contemplation or in connection with the case and the source of the compensation. These disclosures are mandatory and not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M. D. Fla. 2002).

Harris' Disclosure Form 2030 does not comply with the Bankruptcy Code or Rules. In many of the eleven cases before the Court, Harris' Disclosure indicated the Debtors had agreed to pay him "0.00 dollars," when in fact, the Debtors had agreed to pay between $2,100 and $2,500 as the flat fee.

In the Thomas case, Case No. 20-10207, the Debtor had paid $580 up front although the Disclosure states that nothing had been paid. The same defect is found in Debtor's answer to Question 16 on the SOFA. In the Carlton case, Case No. 20-10088, the disclosure states that the Debtor agreed to pay $2,500, when actually the documents indicated that $2,100 was due from the Debtor.

Particularly lacking on the disclosures is Harris' failure to explain that the post-petition fee of $2,500 is not entirely his fee. The LOCARMA indicates that 25% of the fee goes to FSF for its services. The maximum Harris actually receives is $1,875, while FSF retains the rest or $625.

Further, Harris' disclosures are deficient by not disclosing that he is using the FSF LOCARMA as a financing device for his law practice. Under the LOCARMA, Harris is entitled to a disbursement of anywhere from $1,260-$1,500 per case within three days of the case being filed. Granted, if the debtor had paid the basic fee up front, Harris would have been similarly compensated, but by using the FSF LOCARMA the debtor becomes contractually obligated to pay a sum double the pre-petition fee and for which FSF is allowed to sue for collection upon default.

For all of the above reasons, Harris' disclosures in the eleven cases referenced do not conform the requirements of 11 U.S.C. § 329 and are inadequate.

**E.    Harris' Fee Splitting with FSF is not Adequately Disclosed to the Court.**

The factoring of the Debtor's legal fees under the bifurcated fee agreements also raises issues concerning fee splitting. Either the factoring expense of 15% + 25% due to FSF is Harris' cost of borrowing his fees or the FSF LOCARMA involves fee splitting. For all the debtor knows, and frankly all this Court knows, FSF is also counsel in these representations as well since Attorney Garrison interacted with the Kentucky Bar Association on behalf of Harris and the LOCARMA.

The contract, however, does not adequately disclose this information to the Debtor, nor was this information disclosed to the Court.

In general, Courts have articulated four concerns regarding factoring agreements such as the ones used by Harris herein.  These are as follows:

1.  An attorney's failure to list in the Disclosure of Compensation all aspects of the fee splitting arrangements with entities such as Fresh Start;

2.  Debtors who use the "zero money down" option with their fees factored by entities like Fresh Start ended up paying more than those who paid the retainer up front;

3.  The improper shifting of most, if not all, of the fees to the post-petition agreement; and

4.  A conflict of interest in both creating a nondischargeable debt through the use of a post-petition agreement and a conflict arising from the attorney's desire to maintain a favorable relationship with companies such as FSF while representing the client.  *In re Wright*, 591 B.R. 68, 89-99 (Bankr. N.D. Okla. 2018).

In *Wright*, the court found that in a situation similar to the one presented by Harris and FSF's contract, the Disclosure of Compensation was problematic.  First, the disclosure was misleading because it indicated, as here, the attorney received a flat fee for legal services, when in actuality the attorney received a portion of the fee and the financing company received a percentage as well.  The court in *Wright* called the disclosure of compensation "grossly misleading" and not of the level of candor required under § 329.  *Id.* at 92.  The attorney in *Wright* made the same disclosures Harris made in these cases.  Both attorneys disclosed they had agreed to accept the total fee for legal services, when in fact, the attorney did not reveal in his Disclosure of Compensation that he shared his fee with any other person.  The Disclosure "conflates the total amount he agreed to accept for his

services, even though those amounts differ by several hundred dollars in each of the BK Billing Cases." *Id.*

The court in *Wright* was less concerned with the ethical ramifications of the fee sharing arrangement, citing 11 U.S.C. § 504(a) and Rule 5.4(a) of the Oklahoma Rules of Professional Conduct which states, "a lawyer or law firm shall not share legal fees with a non-lawyer." The court was more concerned with the attorney's "rather brazen" position that the collection of a fee from his client that is split between himself and the financing company did not constitute the sharing of compensation.

The Kentucky Rules of Professional Conduct on fee sharing are the same as those cited in the *Wright* case. SCR 3.130(5.4) states, "(a) [a] lawyer or law firm shall not share legal fees with a non-lawyer[.]"[4] The Supreme Court commentary on the above Rule states, "the provisions of this Rule express traditional limitations on sharing of fees. These limitations are to protect a lawyer's independence of judgment."

This Court is concerned with the fee splitting between Harris and FSF. There is no mention by Harris in the Disclosures regarding a portion of the fee going to FSF. This is particularly troubling since Harris is charging a higher fee to those debtors using the FSF contract, than those debtors who pay the entire fee prior to the filing of the Petition. Under the FSF contract, a debtor is charged $2,500 for attorney's fees, when in fact Harris only receives 75% of that or $1,875. The Court determines that Harris' Disclosures of Compensation are misleading and violate 11 U.S.C. § 329.

---

[4]The Rule goes on to list several exceptions that do not apply here.

### F.        Harris' Fee is not Reasonable.

This Court is charged with determining the reasonableness of fees charged by a debtor's attorney pursuant to 11 U.S.C. § 329(b). The Court must compare the reasonableness of the fee charged under the bifurcated contract and the fee charged under the traditional format of the full fee paid pre-petition. Any such analysis rests on, whether the debtor receives sufficient value from the bifurcated contract model to justify the increased cost.

The U.S. Trustee undertook an analysis of Harris' fees in Chapter 7 cases filed during 2019. During calendar year 2019, excluding Chapter 13 cases and any Chapter 7 case filed in which he used a bifurcated fee arrangement, Harris filed fifty-three Chapter 7 cases in the Western District of Kentucky. Harris consistently used a flat fee of $1,250. On his Form 2030, Compensation of Disclosure, Harris indicated that his services excluded "representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding."[5] This is the same exclusion Harris uses in his bifurcated fee contracts. As the U.S. Trustee noted, it appears that Harris is providing both sets of clients with the same services, but at an increased rate of $950 for those clients using the bifurcated fee arrangements. The only distinction between the two fee structures, other than the increased cost, is that in the bifurcated fee cases, the debtors in those cases were able to make payments over time, and, of course, FSF fees are added.

---

[5]In this District the Chapter 7 attorneys are expected to prepare the Petition, all Schedules and Statement of Financial Affairs, attend the First Meeting of Creditors, prepare motions to avoid liens, negotiate reaffirmation agreements and attend any hearings thereon.

The Court has not been provided with a justification by Harris for this $950 increase for services under the bifurcated fee contracts. Without an explanation, other than the convenience factor for debtors to pay over time, the increase is simply not justified.

The Bankruptcy Appellate Panel for the Eight Circuit recently considered the reasonableness of attorney's fees under a bifurcated fee contract that involved Fresh Start Funding with the factoring of fees similar to the one used by Harris in these cases. In *In re Allen*, 628 B.R. 641 (B.A.P. 8th Cir. 2021), a Chapter 7 lawyer offered his clients two options to pay his attorney's fees. Under option 1, the debtor could pay in full, pre-petition, $1,500, which included $1,165 for attorney's fees and the filing fee of $335. Option 2, required the debtor to pay $2,000 post-petition, which included $1,665 in attorney's fees and the filing fee of $335. Under either option, counsel provided "pre-filing services," such as meeting with the client, analyzing the debtor's financial situation, legal advice, filing the Chapter 7 petition, pre-filing credit counseling certificate and the list of creditors. The post-filing services, included, preparing and filing schedules, statement of financial affairs, means test calculations, attending the meeting of creditors, monitoring the case, responding to debtor's inquiries and advising the debtor on any stay relief motions, redemptions and reaffirmation agreements. In *Allen*, the U.S. Trustee challenged the fees paid under the second option with the post-petition payment. The court noted the fee arrangement was governed by 11 U.S.C. § 329 and the burden of proving the reasonableness of the fees is on the attorney. *Id.* at 644.

The debtors in *Allen* chose option 2 and paid $500 more than those who chose option 1. The court examined each of the debtor's cases and determined that each debtor was provided with the same services, regardless of whether they chose option 1 or 2. The court rejected counsel's argument that the reasonableness of his fee should be determined under the lodestar analysis, even though the

attorney did not keep contemporaneous time records on his Chapter 7 cases. The Bankruptcy Appellate Panel determined that the Bankruptcy Court was well within its authority to reduce the attorney's fees in the two cases before it by the enhanced $500 fee under option 2. *Id.* at 646.

The Bankruptcy Appellant Panel in *Allen*, however, did not render an opinion on the Fresh Start Funding financing services used by the attorney because the arrangement between Fresh Start and the attorney was not an issue addressed at the Bankruptcy Court level. The Bankruptcy Appellate Panel did not render an opinion on the validity of the Fresh Start contract which contains the same terms as those used by Harris herein. These terms include the line of credit, advancement of 75% of the total fees to the attorney, 60% of the total fees being paid to the attorney upfront and a 15% hold back in the event of a default on payment by a client, as well as the possibility of a collection action by Fresh Start if the client defaults. *See Id.* at 643-44, n. 2-4.

Under Rule 1.5 of the Kentucky Rule of Professional Conduct, an attorney is required to charge a reasonable fee. The U.S. Trustee reviewed the eleven cases herein and determined that none of the cases were particularly complex and were typical for a consumer Chapter 7 proceeding, meaning the fee increase is not related to the complexity of the case.

The U.S. Trustee also took a sampling of fees charged in consumer Chapter 7 cases in all four Divisions of the Western District of Kentucky. The U.S. Trustee used ten total cases per District. The U.S. Trustee determined that the average fee charged by an attorney for a consumer Chapter 7 was less than $1,000. The fees ranged from $900 to $1,600. Given the random sampling, Harris' $2,500 fee far exceeds the highest figures from the sampling. The Court concludes that Harris' bifurcated fees are unreasonable.

The Court is very concerned that the higher fee charged by Harris is not in his clients' best interest financially. Only one of the eleven Debtors referenced herein included the monthly payment under the bifurcated fee arrangement in their Schedule J Monthly Expenses. The U.S. Trustee's analysis concluded that when the monthly payment was added to each of the eleven Debtors' Schedule J, each of the eleven Debtors' expenses exceeded their monthly income as stated on their Schedule I. Under such a scenario, while the monthly payments are part of the Debtors' obligations, the bifurcated fee increases the Debtors' expenses and delays the Debtors' ability to improve their financial position. Under such circumstances, the Court cannot determine that the bifurcated fee contracts are in the Debtors' best financial interests.

## **CONCLUSION**

Based upon the above analysis, the Court finds that the bifurcated fee agreements entered into between the Debtors and Harris and the Fresh Start Funding contracts used in each of the eleven cases herein violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Kentucky Rules of Professional Conduct. Such contracts are not to be used by any attorney practicing bankruptcy law in the United States Bankruptcy Courts for the Western District of Kentucky.

With BAPCPA, Congress greatly encouraged debtors to file Chapter 13. In the Western District of Kentucky debtors must only tender a filing fee or a motion to pay the filing fee in installments to get the Chapter 13 filed, as counsel are paid over time through a plan administered by a standing Chapter 13 trustee. While Chapter 13 is not necessarily available to all debtors, it's flexibility is well-known in the district and it is used quite often when debtors cannot pay their lawyers the full Chapter 7 fee up front on a pre-petition basis.

Further, this Court routinely entertains and approves motions for filing fees to be paid in installments and in other cases for a waiver of the filing fee when circumstances warrant.  There is simply no justification in a Chapter 7 proceeding for counsel to advance the filing fee and later use a post-petition nondischargeable contract to recover the expense.

An Order applying the conclusions of law rendered in this Memorandum-Opinion will be entered in each of the eleven cases referenced herein that applies to the specific facts presented in each case.  An Order incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  October 5, 2021

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICKY BALDWIN and | ) | CASE NO.    20-10009(1)(7) |
| LORIE JEAN BALDWIN | ) | |
| MELISSA ANN MADDOX | ) | 20-10037(1)(7) |
| JIMMY MICHAEL LAWHORN | ) | 20-10048(1)(7) |
| AARON DEON HADLEY and | ) | 20-10068(1)(7) |
| EMILY BELLE HADLEY | ) | |
| DARRELL WAYNE OLLERY and | ) | 20-10084(1)(7) |
| DONNA KAY OLLERY | ) | |
| SHEILA JOAN CARLTON | ) | 20-10088(1)(7) |
| GREGORY RYAN BALDOCK | ) | 20-10158(1)(7) |
| STEPHEN ALLEN THOMAS | ) | 20-10207(1)(7) |
| ROBERT LLOYD RAY and | ) | 20-10211(1)(7) |
| SHEILA LOIS RAY | ) | |
| MARILYN L. JANES | ) | 20-10225(1)(7) |
| HEATHER RENEE HUTCHINS | ) | 20-30066(1)(7) |
| | ) | |
| Debtor(s) | ) | |

## <u>ORDER</u>

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the bifurcated fee

agreements used in the eleven cases referenced herein between the Debtors in those cases and

Attorney Michael Harris and Fresh Start Funding violate the United States Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure and the Kentucky Rules of Professional Conduct. Therefore,

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that bifurcated fee

agreements such as those used by Fresh Start Funding and Attorney Harris herein shall not be entered

into between any attorney representing Chapter 7 debtors in the United States Bankruptcy Court for the Western District of Kentucky.

So ordered this 5th day of October, 2021.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  October 5, 2021

-2-