UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Ricky and Lorie Baldwin, et al. | ) | CASE NO. 20-10009, et al. |
| (Lead Case re: Bifurcated Fee Agreements | ) | CHAPTER 7 |
| and Related Proceedings) | ) | |
| Debtor(s) | ) | **Supplemental Citation** |
| | ) | **Of Authority** |

     Michael Harris, counsel to the Chapter 7 Debtors in the cases captioned above (collectively, the "Debtors"), by and through undersigned counsel, hereby provides this Supplemental Citation Of Authority regarding his Response to the *United States Trustee's Motion For Order Requiring The Return Of Fees Paid On Canceled Attorney Fee Agreement* (the "Motion").  The Motion was filed at ECF docket number 70 on January 20, 2022, and the Response was filed at ECF docket number 74 on February 9, 2022.

    Page 4, footnote 3, of the Response cites the Prophet case, which this Court had previously cited and discussed in the Opinion entered on October 5, 2021 at ECF docket number 50.  The Response notes that the bankruptcy court opinion in Prophet was at that time on appeal.

    Mr. Harris hereby supplements his citation to the Prophet case with the Order And Opinion of the District Court For The District Of South Carolina, Columbia Division, entered in the Prophet appeal on March 14, 2022 (the "Prophet Appellate Opinion").  The Prophet Appellate Opinion reversed the bankruptcy court's order and remanded the case to the bankruptcy court for further proceedings consistent with the Prophet Appellate Opinion.  For the convenience of the Court and all parties, a copy of the Prophet Appellate Opinion is attached

///

hereto as Exhibit A.

Electronically filed  March 22, 2022.

/s/ Scott Bachert
SCOTT BACHERT
KERRICK BACHERT PSC
1025 State Street
P O Box 9547
Bowling Green, KY  42102-9547
Telephone:  (270) 782-8160
Facsimile:  (270) 782-5856

/s/ Joseph E. Cotterman
JOSEPH E. COTTERMAN
**LAW OFFICES OF JOSEPH
E. COTTERMAN, PLLC**
5232 West Oraibi Drive
Glendale, AZ 85308
Telephone:  (480) 353-0540
joe@jeclaw.us
Co-counsel for Mr. Harris, admitted
pro hac vice

## CERTIFICATE OF MAILING

This is to certify, under penalty of perjury, that on March 22, 2022, the foregoing was electronically filed, and also emailed to those parties in interest set forth below.

Timothy E. Ruppel,
Office of the United States Trustee
tim.ruppel@usdoj.gov

/s/ Joseph E. Cotterman
JOSEPH E. COTTERMAN

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Civil Action No. 3:21-cv-01080-JMC |
| | ) | |
| Charles Pernell Prophet and | ) | |
| Shirley Ann Prophet, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| Steven Rosenschein, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | **ORDER AND OPINION** |
| Christine Marie Naughton, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| Benjamin R. Matthews & Assoc., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John P. Fitzgerald, III, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

This matter is before the court on the appeals of Appellant Benjamin R. Matthews &

Associates ("Appellant") from orders filed on March 29, 2021, by the Hon. David R. Duncan of

the United States Bankruptcy Court for the District of South Carolina ("Bankruptcy Court").  (CSP

ECF No. 50; SR ECF No. 43; CN ECF No. 41.)[1]  The Bankruptcy Court held that Appellant's use

---

[1] Citations to the record herein contain the relevant docket number preceded by identifying letters.
"CV" denotes that the document is listed on the docket in Civil Case No. 3:21-cv-01080-JMC.

1

of bifurcated fee agreements in bankruptcy cases are impermissible under District of South Carolina Local Bankruptcy Rule 9011-1(b) ("SC LBR 9011-1(b)" or "Local Rule").  For the reasons set forth below, the court **REVERSES** the Bankruptcy Court's order and **REMANDS** the case for further proceedings.

## I.    BACKGROUND

A.    <u>Relevant Factual & Procedural Background</u>

Appellant represents debtors filing for relief under Chapter 7 of the Bankruptcy Code. (CSP ECF No. 50 at 2.)  Due to financial struggles caused by the COVID-19 pandemic, Appellant began offering his clients two (2) payment options.  (*Id.* at 3.)  The first option allowed clients to enter into traditional fee arrangements in which the client prepaid all the fees for the case prior to filing.  (CSP ECF No. 42 at 2.)  Appellant refers to this option as "pay before you file."  (CV ECF No. 4-1 at 10.)  The second option allowed clients to bifurcate Appellant's engagement.  (CSP ECF No. 42 at 2.)  Appellant refers to this option as "file now pay later."  (CV ECF No. 4-1 at 10.) The bifurcated agreements were a popular option amongst Appellant's clients, and Appellant filed more than one hundred bifurcated cases.  (CV ECF No. 8 at 17; CV ECF No. 8-1 at 105–06.)

If the client chooses the bifurcated option, then the engagement is split into pre-petition and post-petition services.  (CSP ECF No. 42 at 2.)  In that case, client and Appellant first enter into a Pre-Filing Agreement and then have the option of entering into a Post-Filing Agreement. These agreements explicitly list the services provided by Appellant.  The Pre-Filing Agreement specifically provides that Appellant "will only provide the Pre-Filing Services listed . . . The Pre-Filing Services are <u>not </u>all of the tasks that must be completed to successfully complete your chapter

---

"CSP" denotes that the document is listed on the docket in Bankruptcy Case No. 20-03131-dd. "SR" denotes that the document is listed on the docket in Bankruptcy Case No. 20-03171-dd. "CN" denotes that the document is listed on the docket in Bankruptcy Case No. 20-03293-dd.

7 case." (CV ECF No. 4-1 at 10.) The Pre-Filing Agreement is clear that it does not cover post-filing services. The agreement provides three (3) options for the client to choose from after the case is filed: (1) "You can represent yourself in your bankruptcy case (called 'proceeding *pro se*');" (2) "You can hire another attorney to represent you in your bankruptcy case; or," (3) "*Within ten (10) days after your case is filed*, you can enter into a Post-Filing Agreement with us." (*Id.*)

Further, the Pre-Filing Agreement specifically lists three (3) categories of services involved in a Chapter 7 case. The first category is pre-filing services, which includes the following:

- Meeting and consulting with you as needed prior to filing your case;
- Analyzing the information from your intake questionnaire and other documents;
- Providing due diligence, legal analysis and legal advice in order to help you make important legal choices and to comply with the bankruptcy code and rules; and
- Preparing and filing your Chapter 7 Voluntary Petition, Statement about Social Security Numbers, Pre-Filing Credit Counseling Certificate and List of Creditors to start your Chapter 7 case.

(CV ECF No. 4-1 at 8.) The other two (2) categories are pre-filing services and supplemental post-filing services. The Pre-Filing Agreement also lists specific post-filing services:

- Preparing and filing your Statement of Financial Affairs and Schedules;
- Preparing and filing your Means Test calculations and disclosures;
- Conducting a second signing appointment for you to review and sign your statements and schedules;
- Preparing for and attending your Section 341 Meeting of Creditors;
- Administering and monitoring your case and communicating with you throughout the process;
- Forwarding the Trustee Questionnaire and debtor documents to the Trustee;
- Noticing your employer to stop any garnishments;
- Reviewing and responding to Trustee requests;
- Reviewing and advising you regarding any motions for stay relief;
- Reviewing and advising you regarding any reaffirmation agreements or redemptions;
- Reviewing and advising you regarding any creditor violations; and
- Any legal service required by the local rules.

(CV ECF No. 4-1 at 8.)  Finally, the Pre-Filing Agreement lists specific supplemental post-filing

services:

- Reviewing and advising regarding any turnover demands from the Trustee[;]
- Attending any continued Section 341 Meeting of Creditors;
- Reviewing and advising regarding any 2004 exams and attending related exam;
- Reviewing and advising you regarding any audit by the US Trustee;
- Preparing and filing claims or objections to claims when appropriate;
- Reviewing and advising you regarding any lien avoidance matters;
- Drafting and/or negotiating a reaffirmation agreement and attending any related hearing;
- Preparing and filing any amendments to your statements and schedules; and
- Preparing and filing a motion to reinstate the case.

(CV ECF No. 4-1 at 8–9.)  Although the Pre-Filing Agreement expressly limits the services

provided, the "Additional Important Terms" section of the Pre-Filing Agreement states:

> Unbundling or Limited-Scope Representation. By signing below, you acknowledge
> that the Law Firm has expressed that it is ready, willing and able to represent you
> for your entire Chapter 7 case, even if you choose the *File Now Pay Later* option,
> which will require you to sign a Post-Filing Agreement. If you choose the *File Now
> Pay Later* option, you further represent that you are not doing this with the intention
> of having the Law Firm simply file your case and then withdraw, but instead to
> facilitate you making payments over time for your attorney fee so that you can have
> an attorney represent you through the entire Chapter 7 process.

(CV ECF No. 4-1 at 14–15.)

To fund the bifurcated agreements' "file now pay later" approach, Appellant entered into

a Line of Credit and Accounts Receivable Management Agreement ("FSF Agreement") with a

third party, Fresh Start Funding ("FSF").  (CSP ECF No. 42 at 6.)  Pursuant to the FSF Agreement,

FSF collects payments for Appellant and applies those payments to the amount Appellant owes

under the line of credit.  (*Id.* at 7.)  However, the service comes at a cost.  FSF advances 75% of

the post-petition fee associated for each approved account and maintains 25% of the post-petition

attorney fees as a fee for its services.  (CV ECF No. 8-1 at 119.)  Accordingly, the client pays a

different fee for the bifurcated arrangements.  If the client chooses the traditional "pay before you

file" option, then the client enters an agreement with Appellant "covering both pre-filing and post-filing services for a fixed fee of $2,350 (including the filing fee) and providing for a certain supplemental post-filing services charged at $300 per hour for attorney time and $250 per hour for paralegal time." (CSP ECF No. 50 at 3–4.) On the other hand, if the client chooses the bifurcated "file now pay later" option, Appellant charges more money to cover the added cost of fees owed to a third-party, FSF. (*Id.* at 4.) However, despite charging more, Appellant testified that he is still making less on the case because the added fees go to FSF—not to Appellant. (CV ECF No. 8-1 at 120.)

These appeals arise from three (3) separate Chapter 7 cases that Appellant filed using the bifurcated agreement approach.[2] Pursuant to their respective agreements, Charles and Shirley Prophet paid $1,200.00 for pre-filing services and $1,200.00 for post-filing services, (CSP ECF No. 42 at 10 ¶¶ 46, 55); Steven Rosenschein paid $500.00 for pre-filing services and $2,060.00 for post-filing services, (CSP ECF No. 42 at 12 ¶¶ 60–61); and Christine Naughton paid $0.00 for pre-filing services and $2,800.00 for post-filing services, (CV ECF No. 8-1 at 153; CN ECF No. 41 at 8 ¶ 39).

Acting United States Trustee[3] John P. Fitzgerald, III, (the "UST") moved in all three (3) cases for review of Appellant's use of the bifurcated fee agreements, cancellation of the bifurcated agreements, disallowance and return of the fees paid to Appellant, and other relief appropriate under 11 U.S.C. §§ 105(a), 329(b), 526, Fed. R. Bankr. P. 2016 and 2017. (CSP ECF No. 22 at 1; CV ECF No. 8-1 at 12.) The UST alleged that the agreements violated SC LBR 9011-1(b). (CSP

---

[2] The cases on appeal are *In re Prophet*, No. 3:21-cv-01080-JMC; *In re Rosenschein*, No. 4:21-cv-1081; and *In re Naughton*, No. 9:21-cv-01082.

[3] United States Trustees are officials of the United States Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581–89.

No. 22 at 12; CV ECF No. 8-1 at 23.)  The Bankruptcy Court agreed with the UST, holding that the bifurcated agreements are impermissible under the Local Rule and ordered Appellant to return all fees paid post-petition under the agreements, less any filing fees or out of pocket costs.[4]  (CSP ECF No. 50; SR ECF No. 43; CN ECF No. 41.)  Appellant appealed all three (3) orders to this court.  (CV ECF No. 1.)

B.    Chapter 7 Bankruptcy Cases

The cases before the court illustrate the challenges faced by Chapter 7 debtors and debtors' counsel when individuals in need of bankruptcy relief are unable to pay a pre-petition flat fee to hire an attorney.  *See, e.g.*, *In re Hazlett*, No. 16-30360, 2019 WL 1567751, at *5 (Bankr. D. Utah Apr. 10, 2019) ("The Court is not alone in its concern as to how the present system makes it difficult for individuals in need of Chapter 7 relief to afford an attorney.").  Section 727 of the Bankruptcy Code discharges the debtor "from all debts that arose before the date of the order for relief under this chapter," except as provided in § 523.  11 U.S.C. § 727(b).  Section 523 governs exceptions to discharge and does not explicitly exempt bankruptcy attorneys' pre-petition fees.  11 U.S.C. § 523.  Pursuant to § 362 of the Bankruptcy Code, a Chapter 7 bankruptcy petition operates as a stay against collection of claims against a debtor that arose prior to the commencement of the bankruptcy case.  11 U.S.C. § 362(a).  Further, once the petition is filed, all non-exempt property held by the debtor becomes estate property, which the Chapter 7 trustee uses to pay the debtor's creditors.  11 U.S.C. §§ 541, 704, 726.  Under § 330, only attorneys employed by the Chapter 7 trustee with court approval under 11 U.S.C. § 327 may be paid from estate property for post-

---

[4] Because the Bankruptcy Court found the agreements impermissible on this basis, it did not rule on the other challenges presented by the UST.  (*See* CSP ECF No. 50 at 23 ("Because the Court finds the bifurcated fee arrangement impermissible under SC LBR 9011-1(b), the Court need not reach the additional issues of the reasonableness of Mr. Matthews' fees under § 329 or the adequacy of the disclosures under § 526 or § 528.").)

petition services. *Lamie v. U.S. Trustee*, 540 U.S. 526, 537 (2004). A debtor who successfully concludes a Chapter 7 case receives a discharge of all pre-petition debt, other than enumerated exceptions. 11 U.S.C. §§ 523, 727(b). A debt for attorney fees accumulated pre-petition is a dischargeable debt. *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005); *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127 (7th Cir. 2003). Consequently, "an attorney that takes a post-petition action to collect on unpaid pre[-]petition fees as a personal liability of the debtor violates either the automatic stay in § 362(a) or the discharge injunction in § 524." *In re Carr*, 613 B.R. 427, 434 (Bankr. E.D. Ky. 2020) (citing *In re Gourlay*, 483 B.R. 496, 500 (Bankr. E.D. Mich. 2012)).

Because of these limitations, a typical representation agreement between an attorney and a debtor establishes a flat fee to be paid upfront for the attorney's representation of the debtor from the beginning to the end of the case. Because any portion of the attorney fee that is not paid before the filing is subject to discharge under § 524, attorneys may delay filing until the debtor is able to pay the entire fee. If debtors cannot pay the fee upfront, they have limited options. The debtor can delay the filing until all fees can be paid up front, the attorney can file the petition and hope the debtor will voluntarily pay fees post-petition, or the attorney can file a Chapter 13 petition instead so the fees may be paid post-petition.[5] *See, e.g.*, *In re Brown*, 631 B.R. 77, 85 (Bankr. S.D. Fla. 2021) (citation omitted). Each of these options presents its own set of problems. Debtors who cannot afford counsel can proceed *pro se* or use a bankruptcy petition preparer.[6] Although these

---

[5] In a Chapter 13 case, lawyers are paid for both pre-petition and post-petition services with assets of the estate. However, "a debtor's inability to pay an up-front retainer should not be the deciding factor in choosing between filing under Chapter 7 or Chapter 13." *In re Hazlett*, 2019 WL 1567751, at * 6.

[6] Under either of the *pro se* options, "the Chapter 7 consumer system becomes unnecessarily time-consuming and ineffective for debtors, creditors, trustees, and the Court." *In re Hazlett*, 2019 WL 1567751, at *5.

rules are intended to protect debtors, they often result in greater prejudice to debtors who are too poor to pay a retainer up front to secure much needed representation.

C.    Bifurcated Fee Agreements

Bifurcated fee agreements, like those at issue here, attempt to solve these problems by using one fee agreement for pre-petition services and a second fee agreement for post-petition work. The fee charged in the first agreement may be little or nothing with the bulk of the fee paid under the second agreement. Such bifurcated agreements "are designed to change the attorney's fees into a post-petition, non-dischargeable debt that can be collected from the client without violating either the automatic stay or the discharge injunction." *In re Allen*, 628 B.R. 641, 644 (B.A.P. 8th Cir. 2021). These agreements must be permissible under the Bankruptcy Code, the Bankruptcy Rules, local court rules, and state rules of professional conduct.

To comply with the Bankruptcy Code, attorneys using bifurcated agreements must provide adequate disclosures regarding payment. Section 329 of the Bankruptcy Code requires disclosures for payments made "in a case under this title, or in connection with such a case," and that such compensation be reasonable. 11 U.S.C. § 329. Additionally, as a "debt relief agency,"[7] an attorney representing a Chapter 7 debtor must execute a written contract within five (5) business days of meeting with the debtor and prior to filing the petition that explains "clearly and conspicuously" the services the attorney will provide and the fees and terms of payment for such services. 11. U.S.C. § 528(a)(1). Attorneys are also prohibited from advising a debtor to incur more debt in contemplation of filing a bankruptcy petition or to pay a fee or charge for services performed as part of preparing for or representing a debtor in a case. 11 U.S.C. § 526(a)(4).

---

[7] A debt relief agency is "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration." 11 U.S.C. § 101(12)(A).

Next, attorneys must comply with state rules of professional conduct and local bankruptcy court rules. In South Carolina, Local Bankruptcy Court Rule 9011-1(b) provides in relevant part:

> Except as may be provided in a written agreement with the debtor concerning appeals and adversary proceedings, the law firm/attorney which files the bankruptcy petition for the debtor shall be deemed the responsible attorney of record for all purposes including the representation of the debtor at all hearings and in all matters arising in conjunction with the case, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure.

U.S. Bankr. Ct. Rules D.S.C., LBR 9011-1(b).[8]    South Carolina's Bankruptcy Rules also provide that an attorney may be permitted to withdraw by the court "upon motion and cause shown or upon the consent of the represented party." U.S. Bankr. Ct. Rules D.S.C., LBR 2091-1(a).

## II.    LEGAL STANDARD

A district court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; *see, e.g.*, *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010). The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Williams v. Colonial Penniman, LLC*, 582 B.R. 391, 396 (E.D. Va. 2018). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). The bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. *Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 495 (D.S.C. 2000). A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (citing *United*

---

[8] The court notes that the Rule was amended in 2020. The previous version of the Rule stated, "Except as may be provided in an attorney's written agreement with a party concerning appeals and adversary proceedings, any attorney who files documents for or on behalf of a party in interest shall remain the responsible attorney of record for all purposes including the representation of the party at all hearings and in all matters that arise in conjunction with the case."

*States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A bankruptcy court's conclusions of law are subject to *de novo* review. *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *In re K & L Lakeland, Inc.*, 128 F.3d 203, 206 (4th Cir. 1997). "By definition, *de novo* review entails consideration of an issue as if it had not been decided previously." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992), *as amended* (Aug. 12, 1992). Mixed questions of law and fact are reviewed under a hybrid standard, "applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

Additionally, "[c]ourts have broad discretion in interpreting and applying their own local rules adopted to promote efficiency in the court." *Matter of Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (citing *Martinez v. Thrifty Drug & Disc. Co.*, 593 F.2d 992, 994 (10th Cir. 1979)). Accordingly, "considerable deference" is accorded to a lower court's interpretation and application of its own rule. *Id.* (citing *Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980)). Such deference, however, is not synonymous with acquiescence. *See In re Nosek*, 609 F.3d 6, 9 (1st Cir. 2010); *In re Shenango Grp., Inc.*, 501 F.3d 338, 346 (3rd Cir. 2007).

Appellant presents a mixed question of law and fact: "Whether the Bankruptcy Court erred by holding that Appellant violated the Local Rule by offering a bifurcated engagement to the debtors in these chapter 7 cases so that they could afford to hire counsel through the provision of installment payment terms." (CSP ECF No. 7 at 8.) Whether Appellant violated SC LBR 9011-1(b) through his agreements with the debtors is a legal conclusion that is based on the individual factual circumstances in the case. *See In re Frushour*, 433 F.3d 393, 398 (4th Cir. 2005); *see also Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

### III.     ANALYSIS

A.     <u>The Bankruptcy Court's Holding</u>

The Bankruptcy Court held that bifurcated agreements are entirely impermissible under SC LBR 9011-1(b). (CSP ECF No. 50.) Specifically, the Bankruptcy Court found that "[t]he Local Rule requires the attorney to perform all duties in connection with the representation of the debtor, beginning with the pre-petition disclosures and investigations and the preparation of the petition, through the filing of the petition and the conclusion of the case, with the exception of adversary proceedings and appeals when excluded in writing." (*Id.* at 13–14.) Although other courts with different procedures and practices permit similar arrangements, the Bankruptcy Court determined that the South Carolina's Local Rule requires continued representation that "simply does not allow bifurcated representation." (*Id.* at 14.) Appellant does not contest that SC LBR 9011-1(b) has been historically relied on in this district to "impose a continuing duty on a debtor's attorney to represent a debtor throughout the bankruptcy process." (CV ECF No. 7 at 16 (citing to the Bankruptcy Order).) Appellant argues, however, that neither the bifurcated agreements nor Appellant's conduct violated South Carolina's Local Rule because the policy behind the bifurcated agreements aligns with the policy behind the Rule. (CSP ECF No. 7 at 8.) He argues that the purpose behind the SC LBR 9011-1(b) is to ensure debtors have representation for the duration of their case and that allowing debtors to separate payment fulfills this purpose.

B.     <u>Case Law on Bifurcated Agreements</u>

Review of the relevant case law shows that, in determining the appropriateness of a bifurcated Chapter 7 fee agreement, the court must consider the requirements of the Bankruptcy Code, the Bankruptcy Rules, local rules of professional conduct, and local bankruptcy court rules. Neither party has put forth, nor has the court been able to find, any binding precedent where a

court determined that bifurcated fee agreements like those at issue were prohibited as a matter of law. Instead, many courts faced with similar agreements have found that bifurcated fee agreements are not prohibited *per se*, but that the agreements before the court were either improper under the applicable rules or that the court could not determine their propriety based on the record.[9]

For example, in one of the cases discussed by the parties and the Bankruptcy Court, *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012), a United States Trustee filed a motion seeking cancellation of a fee agreement between Chapter 7 debtors and counsel before the United States Bankruptcy Court for the Eastern District of Michigan. First, the *Slabbinck* court rejected the UST's argument that the pre-petition and post-petition agreements at issue actually constituted one agreement. *Id.* at 583. The court explained that the two (2) agreements clearly delineated the services rendered and fees expected under each agreement. *Id.* Next, the court looked at persuasive authority from other courts and gleaned that it should first analyze the rules governing the attorney in the case and then evaluate the propriety of the two (2) agreements made by the debtors and the attorney. *Id.* at 587. The court determined that the applicable rules of professional conduct allowed an attorney to take into consideration the client's ability to pay and to agree to limit the scope of representation as long as the agreement does not violate the attorney's duty of competence and the terms have been fully explained and consented to by the client. *Id.* at 588. Although the court found that unbundling was not *per se* prohibited by the rules, the court could

---

[9] *See, e.g.*, *Bethea*, 352 F.3d at 1128 ("Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins[.]"); *In re Milner*, 612 B.R. 415, 431 (Bankr. W.D. Okla. 2019) (holding that bifurcated contracts are not prohibited by the Bankruptcy Code but were not used properly in the case); *In re Mansfield*, 394 B.R. 783, 794 (Bankr. E.D. Pa. 2008) ("In order to recover for post[-]petition legal services, a Chapter 7 attorney must segregate the fee for pre[-]petition services from the fee for post[-]petition services.").

not determine from the record whether the attorney had adequately consulted with the client and obtained informed consent. *Id.* at 594–96.

In *Walton v. Clark & Washington, P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012), the court determined that "there is nothing inherently wrong with a lawyer giving terms to clients for the payment of legal services." *Id.* at 386. The court went on to find that the two-contract procedure employed by the attorney in the case was proper because the pre-petition fee agreement described the procedure in detail and set forth the clients three (3) options for post-petition legal services. *Id.* The procedure also allowed the client a two-week "cooling off" period to decide whether to retain the attorney for the post-petition services, during which the attorney would continue representation. *Id.* at 386–87. Finally, the court explained that the attorney's process provided for adequate disclosure and informed consent. *Id.* at 387.

In *In re Carr*, the Bankruptcy Court for the Eastern District of Kentucky found that the attorneys' representation of a debtor under dual contracts satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable ethical rules. *In re Carr*, 613 B.R. at 436. Specifically, the court determined that the attorneys and the debtor executed written contracts in compliance with § 528, the attorneys did not advise the debtor to incur debt to pay for legal services and did not enter into factoring agreements to sell or assign the debtor's post-petition debt to a third party in exchange for a discounted lump-sum payment. *Id.* at 432. The court also found that the attorneys disclosed a reasonable compensation arrangement with the debtor and that the structure of the fee agreements did not violate Kentucky's Rules of Professional Conduct. *Id.* at 436–41. The court also found that the dual contract option employed by the attorneys in the case comported with persuasive case law on separate fee agreements. *Id.* at 441–42 (citing *In re Slabbinck*, 482 B.R. 576; *In re Hazlett*, 2019 WL 1567751; and *Walton*, 469 B.R. 383).

Significantly, the court noted that the debtor retained the attorneys again post-petition and the attorneys did not attempt to withdraw, with or without court approval, so they did not violate the local rule requiring court approval for withdrawal. *Id.* at 438 ("The Court leaves for another day the issues that may be raised in other cases upon the post-petition filing of a Motion to Withdraw.").

C.    Analysis of the Local Rule

The Bankruptcy Court distinguished these cases because they were "all from other districts, where SC LBR 9011-1(b) does not control." (CSP ECF No. 50 at 20.) However, at least one case considered a rule similar in substance and purpose to South Carolina's Local Rule. In *In re Hazlett*, the Bankruptcy Court for the District of Utah analyzed whether the use of bifurcated fee agreements violated Utah Local Rule 2091-1, establishing requirements related to attorney scope of representation. *In re Hazlett*, 2019 WL 1567751, at *10. Utah's Rule provides that:

> Scope of Representation. A debtor's attorney must represent and advise the debtor in all aspects of the case, including the § 341 Meeting, motions filed against the debtor, reaffirmation agreements, agreed orders, and other stipulations with creditors or third parties, and post-confirmation matters. The debtor's attorney must also represent the debtor in adversary proceedings filed against the debtor unless, pursuant to this rule, the Court has excused the attorney from this requirement. *The scope of representation cannot be modified by agreement*. The court may deny fees or otherwise discipline an attorney for violation of this rule.

Bankr. D. Ut. LBR 2091-1(a) (emphasis added). The *Hazlett* court explained that "[t]he intent of this rule is indeed to restrict the use of limited[-]service agreements (unbundling) by debtor's counsel." *In re Hazlett*, 2019 WL 1567751, at *10. However, the court noted that the bifurcated agreement procedure in the case provided that "the law firm is willing to complete the representation, and it is only by the debtor's election that the case proceeds *pro se*." *Id.* The court explained that, because debtors are free to terminate an attorney's services at any time, it did not see the use of bifurcated fee agreements as creating an issue under Utah's scope of representation

rule. *Id.* Ultimately, the court held that "it is not a *per se* violation of this Rule if an attorney uses bifurcated fee agreements in a consumer Chapter 7 case to facilitate the debtor's ability to afford legal representation." *Id.*

The court is persuaded by this reasoning. Like debtors in Utah, South Carolina debtors are free to terminate an attorney's services at any time, and the local rules provide a method for an attorney to request court permission to withdraw from a case "upon motion and cause shown or upon the consent of the represented party." U.S. Bankr. Ct. Rules D.S.C., LBR 2091-1(a). Additionally, Appellant's agreements with the debtors below provide the debtors with the election to choose whether to represent themselves *pro se*, hire another attorney, or enter a post-filing agreement with Appellant within ten (10) days of filing. (CV ECF No. 4-1 at 10.) Appellant acknowledges that, regardless of whether the debtor signs a post-petition agreement, he is the attorney of record for the debtor unless and until the court allows him to withdraw. And, in the cases before the court, Appellant did not attempt to withdraw and obtained satisfactory results in each case. In fact, the depositions of the debtors in these cases illustrate that the debtors were appreciative of the opportunity to use bifurcated agreements to file for bankruptcy sooner and were satisfied with the results Appellant obtained in their cases. Even if Appellant had attempted to withdraw from the case, he could not do so without permission from the court. Thus, the Local Rules provide their own safety measure to protect debtors from attorneys who seek to withdraw in bad faith. Like the court in *In re Carr*, the court "leaves for another day the issues that may be raised in other cases upon the post-petition" attempt to withdraw. *In re Carr*, 613 B.R. at 438.

The court notes that an appellate court must give greater deference to a lower's court interpretation of its own rules. *See United States Fid. & Guar. Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964) (district court is the best judge of its own rules). Deference, however, "is not

to be confused with automatic acquiescence," *In re Nosek*, 609 F.3d at 9 (citing *United States v. One 1987 BMW 325*, 985 F.2d 655, 657 (1st Cir. 1993)), and only requires the court to accept interpretations "that are reasonable in light of the principles of construction courts normally employ," *Green v. Shalala*, 51 F.3d 96, 100 (7th Cir. 1995) (citing *Pettibone Corp. v. United States*, 34 F.3d 536, 541 (7th Cir. 1994)).   The deference entitled to a bankruptcy court's interpretation of its own rules "does not insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review." *In re Shenango Grp., Inc.*, 501 F.3d at 346 (citations omitted).   Abuse of discretion occurs where a court's "conclusions are based on mistaken legal principles or clearly erroneous factual findings." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001).

Reading SC LBR 9011-1(b) as a total bar to bifurcated agreements would undermine the very purpose of the Rule.   The purpose of the SC LBR 9011-1(b) is to maintain the integrity and efficient handling of matters before the bankruptcy court.   *In re Mungo*, 305 B.R. 762, 766 (Bankr. D.S.C. 2003) (discussing the requirements of former Local Rule 9010-1(d), predecessor to Local Rule 9011-1).   The Rule allows courts and other interested parties "to determine and rely on the appearance of counsel in order to encourage the efficient administration of cases, to include coordinating the service of pleadings and objections and the noticing of hearings." *Id.*   The goals of the Rule are frustrated when an attorney fails to completely satisfy its provisions because "[c]lients who proceed through a case without an attorney to shepherd them through the complexities of the bankruptcy process tax the resources of the court[.]" *Id.*   Bifurcated agreements, when utilized properly and with sufficient safeguards, enable debtors who otherwise could not afford counsel to obtain legal services of an attorney to aid them in navigating the complex bankruptcy process.

The court is mindful of the concern that attempts by counsel "to limit or exclude certain types of representation, or to condition continued representation on the prepayment of additional fees, can leave debtors vulnerable and without representation during a crucial part of their case." *In re Burgess*, No. 16-03815-JW, at 8 (Bankr. D.S.C. Apr. 19, 2017). However, as the court stated above, Appellant has acknowledged that, regardless of whether the debtor signs a post-petition agreement, he is the attorney of record for the debtor until the court allows him to withdraw. This is consistent with the South Carolina Rules of Professional Conduct[10] and withdrawal is controlled by the Bankruptcy Court pursuant to SC LBR 2091-1(a). Importantly, Appellant did not attempt to withdraw from any of the underlying cases and was successful in assisting each of the debtors. The court cannot read South Carolina's Local Rule to bind debtors and their attorneys together for the duration of a case with no possible exit strategy for either party, particularly where the local rules specifically provide a means for withdrawal.[11] *See* U.S. Bankr. Ct. Rules D.S.C., LBR 2091-1(a).

Because the Bankruptcy Court only made findings based on its determination that Appellant violated SC LBR 9011-1(b), this is the only issue before this court on appeal. (CSP ECF No. 50 at 23.) Therefore, the court makes no determination as to the reasonableness of Appellant's fees, the propriety of using FSF to collect from the debtors, the adequacy of Appellant's disclosures to the debtors, or whether the record shows that the debtors provided

---

[10] *See, e.g.*, *Biel v. Clark*, No. 2008-UP-285, 2008 WL 9841728, at *3 (S.C. Ct. App. June 4, 2008) (pursuant to Rule 1/16 of the South Carolina Rules of Professional Conduct, "the right to discharge a lawyer at any time, with or without cause, lies solely with the client.").

[11] The court also notes that SC LBR 9011-1(b) was updated in 2020 "to clarify an attorney's duty to represent a client." U.S. Bankr. Ct. Rules D.S.C., LBR 9011-1(b) note to 2020 amendment. If the intent of the Rule was to explicitly prohibit unbundling of services and bifurcated agreements, the court can only assume the amendment would have included specific language to that effect.

informed consent for the structure of the fee agreements.  Accordingly, the court reverses the order of the Bankruptcy Court and remands for further proceedings on these issues.

## IV.    CONCLUSION

For the foregoing reasons, and having carefully considered the briefs, the record, and the applicable law, the court **REVERSES** the order issued by the Bankruptcy Court on March 29, 2021 and **REMANDS** the case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 14, 2022
Columbia, South Carolina

18